UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **EDWARD MASON, JR.** | **CASE NO. 2:17-CV-01596** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CB&I, LLC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 28] filed by defendant CB&I, LLC ("CB&I") in response to the employment discrimination suit brought by Edward Mason, Jr. Mason opposes the motion.

### I.
### BACKGROUND

This suit arises from Mason's employment by CB&I at the Cameron LNG Liquefaction Project being constructed in Hackberry, Louisiana. Mason, who is African-American, was hired by CB&I as a safety advisor and worked in that position from October 14, 2015, until his termination on February 2, 2016. Mason asserts that CB&I employees, including supervisors, frequently used racial slurs and derogatory, racially-charged language in reference to and directed at other CB&I employees, including Mason. He further asserts that he attempted to address this behavior by reporting it to management and human resources personnel and by calling CB&I's hotline, to no avail. After these reports, however, he alleges that management began scrutinizing his work and trying to catch him in a mistake, in order to harass and intimidate him. *See* doc. 1, ¶¶ 10–21.

On February 1, 2016, Mason had difficulty entering through a designated security checkpoint to access the existing facility side of the project (also known as the "REGAS facility"), as he was required to do each day. He argued with the security guards after triggering the security wand and being directed to remove items from his pocket. *See* doc. 28, att. 3, pp. 3–6 (incident reports). Mason testified that the guards were ordering him to remove a paper booklet and that he protested because paper could not trigger the wand. Doc. 51, pp. 227–29. Incident reports from that date were sent to Cameron LNG Health, Safety, Security, and Environmental Manager Rick Oney, who informed Mason's supervisor James R. Skains that Mason had repeatedly refused to comply with security procedure and would no longer be allowed access to the facility as a result. Doc. 28, att. 3, pp. 2, 7. Mason was terminated by CB&I the following day. *Id.* at 9–10. He asserts that CB&I has consistently refused to rehire him. Doc. 1, ¶ 41.

Mason initiated proceedings with the Equal Employment Opportunity Commission ("EEOC") by filing an intake questionnaire on or about February 18, 2016. Doc. 40, att. 28. He then filed a charge of discrimination with the Louisiana Commission on Human Rights and the EEOC on August 16, 2016. Doc. 1, att. 4. He alleged that he had been subjected to harassment and intimidation, and ultimately fired, on account of his race and retaliation. *Id.* The EEOC issued a Notice of Right to Sue upon request on September 11, 2017, on the grounds that more than 180 days had passed since the charge was filed. Doc. 1, att. 5. Mason then filed suit in this court on December 8, 2017, raising claims of disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act

of 1964, and retaliation under the state whistleblower statute. Doc. 1; doc. 7 (amended complaint).

CB&I now moves for summary judgment, asserting that Mason lacks adequate support for his Title VII claims and that Mason failed to exhaust his hostile work environment claim as required under Title VII. Doc. 28, att. 1. Furthermore, it argues that Mason's state law claim has prescribed. *Id.* Mason opposes the motion as it relates to his Title VII claims. Doc. 40. CB&I has also filed a motion to strike and a motion in limine, which are pending before the court but are not considered in this ruling.[1]

**II.**
**SUMMARY JUDGMENT STANDARD**

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit

---

[1] On the day it filed its reply to the summary judgment motion, CB&I moved to strike several exhibits attached to Mason's opposition. *See* doc. 46. It has also filed a motion in limine seeking to exclude those exhibits at trial. Doc. 43. Mason is able to withstand summary judgment using his unchallenged exhibits, and expeditious review of these motions is required in light of the pretrial conference scheduled for December 18, 2019, and the five day extension already afforded to CB&I for replying to the summary judgment motion. Accordingly, the court will address the summary judgment motion now without the evidence challenged under the motion to strike.

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. *Title VII Claims*

Mason alleges that he was exposed to a hostile work environment and ultimately terminated based on his race, and that he was retaliated against for opposing unlawful race discrimination, in violation of Title VII of the Civil Rights Act of 1964. CB&I moves for summary judgment on all of these claims.

#### 1. *Hostile Work Environment*

Mason raises a claim of hostile work environment based on the racial slurs allegedly used by CB&I supervisors and other employees at the job site. CB&I moves for summary judgment on this claim on the grounds that (1) Mason failed to raise and exhaust the claim

before the EEOC and (2) Mason cannot establish that the harassment was sufficiently severe or pervasive, or that any supervisor harassed him because of his race.

### a. *Exhaustion*

Private sector employees seeking relief under Title VII must exhaust their administrative remedies by filing a charge of discrimination with the EEOC. *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006); 42 U.S.C. § 2000e-5(e)–(f). Once the EEOC issues a right to sue letter to the complainant, that party has 90 days to file a Title VII action in the district court. 42 U.S.C. § 2000e-5(f)(1). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2003). The scope of exhaustion is "defined in light of [the] two competing Title VII policies that it furthers." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to obtain voluntary compliance.

*Id.* at 788–89 (internal citations omitted; cleaned up). Accordingly, the court interprets the exhaustion requirement "not solely by the scope of the administrative charge itself but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 789 (internal quotations omitted). A complainant is not

irrevocably bound by his failure to check certain boxes in an EEOC form, and the crucial element of the charge is instead the factual statement contained therein. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

In Mason's formal charge, filed in August 2016, he checked the boxes for race-based discrimination and retaliation. Doc. 1, att. 4. He only complained of the events of early February 2016, alleging in the factual statement that he "was subjected to harassment and intimidation" when management removed him from the facility and terminated him based on the security guards' complaints. *Id.* However, Mason initiated his EEOC proceedings by filing a signed and verified intake questionnaire with the agency on or about February 18, 2016. *See* doc. 40, att. 28. There he noted that he "had been getting harassed for weeks before [his termination]." *Id.* at 2. He also identified witnesses to the alleged discrimination, including at least one who would testify to a hostile work environment and three others who allegedly experienced discrimination. *Id.* at 2–3. From this questionnaire the EEOC initiated an investigation and sent a Notice of Charge of Discrimination to CB&I.[2] Doc. 40, att. 23. The EEOC's charge detail inquiry notes, based on first contact with Mason on February 19, that Mason "claims throughout his employment management harassed him by trying to find ways to terminate his employment." Doc. 40, att. 25, p. 2. Mason's correspondence with the EEOC also contains several references to harassment. *Id.* at 2–5.

---

[2] The EEOC issued a second notice after Mason filed his formal complaint. Doc. 40, att. 24.

For purposes of determining exhaustion, the EEOC intake questionnaire is counted as a charge it satisfies the EEOC's regulatory requirements and may be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008)).

Mason's intake questionnaire was verified by him as required by EEOC regulations, 29 C.F.R. § 1601.7. It provided sufficient detail as to the parties and alleged discriminatory conduct "to enable the EEOC to issue an official notice of charge . . . [and] set the administrative machinery in motion." *Conner v. La. Dep't of Health and Hospitals*, 247 F. App'x 480, 481 (5th Cir. 2007) (quoting *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)) (cleaned up). It may therefore be construed as a charge for the purpose of determining the claims exhausted. From this document, which contained allegations of being "harassed for weeks" before his termination, the EEOC's investigation could reasonably be expected to include – and, in fact, did include – a hostile work environment claim . Accordingly, this claim is exhausted.

### b. Merits challenge

To prove a prima facie, race-based hostile work environment claim, a plaintiff must establish the following elements: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take

remedial action. *Mosley v. Marion Cnty., Miss.*, 111 F. App'x 726, 727 (5th Cir. 2004) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)). To satisfy the fourth element, the plaintiff must show that the harassment was "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Id.* If the claim involves harassment by a supervisor, the plaintiff need not satisfy the fifth element. *Caldwell v. Lozano*, 689 F. App'x 315, 322 (5th Cir. 2017).

CB&I first argues that Mason's claim fails because the alleged uses of racial slurs are merely isolated incidents, meaning that he cannot satisfy the fourth element above. Mason testified, however, that he heard multiple coworkers use racial slurs, including "n****r," in reference to him and that "[t]hey would say [it] all the time." Doc. 40, att. 2, pp. 19–21. Former coworker Kristi Landon testified that she heard Skains and at least a couple of coworkers call Mason "boy" and that this reference would cause Mason to "stop in his tracks," though she replied shortly thereafter that she never witnessed someone speaking directly to Mason and calling him "boy."[3] Doc. 40, att. 16, p. 25. She also recalled that three other CB&I employees who were not supervisors "liked throwing racial slurs around." *Id.* at 12. Former coworker Audrin Windon recalled racially charged remarks and slurs from Mason's supervisors, James R. Skains and Maury Miller, as well as CB&I process trains manager Jose Lasmarias. Doc. 40, att. 17, pp. 2–7.

An environment's hostility is measured based on the totality of the circumstances. *Harris v. Forlift Systems, Inc.*, 510 U.S. 17, 22 (1993). To succeed, the plaintiff must

---

[3] Landon also recalled frequent use of racial slurs including "n*****r" by supervisors James R. Skains and Maury Miller in reference to Mason, though not when Mason was in the same room. Doc. 40, att. 16, pp. 5–10. Mason testified that Miller never used racial slurs in front of him. Doc. 51, pp. 165–66, 180–81.

present "more than a few isolated incidents of racial enmity." *Brooks v. Firestone Polymers, LLC*, 70 F.Supp.3d 816, 857 (E.D. Tex. 2014) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003)). The Fifth Circuit recognizes, however, that a "a regular pattern of frequent verbal ridicule or insults sustained over time" can meet the "severe or pervasive harassment" requirement. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007). A plaintiff may withstand summary judgment by presenting evidence of routinely made racist remarks. *Brooks*, 70 F.Supp.3d at 857 (citing *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000)). Mason's own testimony establishes that he experienced routine use of racial slurs by his coworkers, and is corroborated by Landon and Windon's accounts.[4] Accordingly, he has shown a genuine issue as to this element of his case.

As for the fifth element, Mason testified that multiple coworkers used the word "n****r" around him and that he reported these incidents to his direct supervisors, Miller and Skains. Doc. 40, att. 2, pp. 19–21. He also stated that he called the company hotline on or about December 22 to complain of this treatment. *Id.* There is no indication that any remedial measures were taken prior to Mason's termination. Mason thus carries his burden under this motion of presenting evidence that supervisors knew about the harassment and failed to rectify it, and the court need not consider the degree to which supervisors

---

[4] CB&I argues that Mason is inserting new claims and factual allegations by introducing testimony from his coworkers on Miller's and Skains's use of racial slurs. Mason, however, has already alleged that he was "exposed to a hostile work environment based solely on his race" and that he "witnessed and was made aware of other minority CB&I LLC employees being referred to by the use of racial slurs . . . ." Doc. 1, ¶ 11. The testimony from Landon and Windon corroborates Mason's account that such language was used and tolerated by his employers. Accordingly, there is no unfair surprise through the testimony's use in opposition to this motion.

participated in the harassment. Summary judgment should be denied as to the hostile work environment claim.

## 2. Disparate treatment

CB&I next moves for summary judgment on Mason's claim that his termination was the result of disparate treatment under Title VII. Because Mason presents no direct evidence of discriminatory motive for his termination, the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination by producing evidence in support of each element of his claim. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). Accordingly, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Id.* If the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). The plaintiff must then come forth with evidence to rebut this reason and show that unlawful discrimination was at least a motivating factor for the adverse employment action. *Agoh v. Hyatt Corp.*, 992 F.Supp.2d 722, 737 (S.D. Tex. 2014) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

### a. Prima facie case

CB&I first argues that it is entitled to summary judgment because of Mason's inability to satisfy the fourth element of his prima facie case. Under this element Mason

must show that a similarly situated comparator was treated more favorably than he was under "nearly identical circumstances." *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016). If a difference between the plaintiff and comparator accounts for the difference in treatment, the employees are not similarly situated for the purposes of this analysis. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009).

Among several possible comparators, Mason identifies Caucasian CB&I employee Jeff Hooper. *Id.* Mason testifies that Hooper was terminated after starting a verbal altercation with security personnel on December 14, 2015, but that he was rehired the same day. Doc. 51, p. 268. CB&I maintains that Hooper was not treated more favorably because he was also terminated. However, the company fails to undermine Mason's testimony that Hooper's termination was mitigated by rehiring while Mason's was not. Mason has shown that the material facts of his case were sufficiently similar to those involved in Hooper, and that Hooper was treated more favorably. Accordingly, Mason shows a genuine issue as to this element of his claim.

### b. *Legitimate, nondiscriminatory reason*

The burden shifts to CB&I to show articulate a legitimate reason for Mason's discharge. CB&I's burden at this stage is one of production rather than persuasion; it need not prove that it was actually motivated by its proffered reason. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). Accordingly, the court's review involves no credibility assessment and the defendant must only set forth admissible evidence showing a reason for the adverse employment action. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016).

Following Mason's encounter at the security checkpoint, Cameron LNG manager Rick Oney notified Mason's supervisor, James R. Skains, and stated that Mason would no longer be allowed access to the REGAS facility. Doc. 28, att. 3, p. 6. According to Skains's declaration, he then terminated Mason because he was worried that Mason's conduct would damage CB&I's relationship with Cameron LNG. *Id.* This evidence satisfies CB&I's burden of production, and the court now considers whether Mason can withstand summary judgment on his ability to show that this reason was a pretext for discrimination.

### c. *Pretext for discrimination*

After the employer meets its burden of production, the plaintiff can only prevail if he produces "substantial evidence" to rebut the employer's nondiscriminatory reasons. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Here Mason argues that CB&I's reason was pretextual. He may establish this element by showing that a discriminatory motive more likely motivated the employer's decision or that the proffered explanation is unworthy of credence. *Haire v. Bd. of Sup'rs of La. State Univ. Ag. And Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013). "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of the defendant's true motive." *Laxton*, 333 F.3d at 578.

Mason argues that CB&I's ready use of the security checkpoint incident as justification for his firing points to a discriminatory or retaliatory motive. As he observes, the Rick Oney email references "3 complaints" and "3 different occasions" of Mason refusing to obey orders from security. Doc. 28, att. 3, p. 6. Oney also states that Mason is

banned from the REGAS facility "[a]s a result of these recurring issues . . . ." *Id.* Yet the incident reports that Oney attached to his email only showed one incident on one date, involving a verbal disagreement. *See id.* at 3–5; *see also id.* at 7 (Skains declaration, noting that incident reports were attached to email). Mason testified that he had had no prior incidents with security, and that to his knowledge the plant never investigated the verbal altercation. Doc. 51, pp. 335–339. He further testified that, despite the alleged security concerns raised by the altercation, his access to the plant was not revoked for another 36 hours. *Id.* at 339.

In light of this evidence, the comparator who was immediately rehired by CB&I after an altercation with security, and accounts of supervisors using and tolerating discriminatory language, Mason has shown that genuine issues exist as to the true motive for his dismissal. Accordingly, summary judgment must be denied as to this claim.

### 3. Retaliation

Finally, CB&I moves for summary judgment on Mason's Title VII retaliation claim. When, as here, the claim is premised on a pretextual rationale for dismissal, it is analyzed under the *McDonnell Douglas* burden-shifting framework. *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). To establish a prima facie case, a plaintiff must show that (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). "Protected activity" may consist of either opposing an activity made unlawful under Title VII or participating in a proceeding under that statute. 42 U.S.C. § 2000e-3(a).

CB&I asserts that Mason cannot satisfy the first or third elements of his prima facie case.[5] First, CB&I alleges that there is no evidence that Mason complained of race discrimination until after his termination. Mason shows that he complained of being "under fire and [constant] harassment" from his supervisor, Miller, in his daily HSE inspection form on November 24, 2015, though he did not mention any race-based harassment on this form. Doc. 40, att. 5. Mason testified that these forms were used to report any issue, including problems with another employee, and that CB&I managers were supposed to read the forms each day. *See* doc. 51, pp. 140–47. Mason also testified that he approached Skains, individually and with coworkers, beginning in November 2015, to complain about Miller targeting him and that he and others told Skains that Miller was racist and had a problem with the black employees. *Id.* at 98–114. Mason further testified that he approached CB&I's on-site human resources manager, Lowell Cranford, in December 2015, and complained that the company had "a lot of issues on this job with blacks." *Id.* at 117–18. Finally, Mason testified that he called CB&I's human resources hotline multiple times beginning in December 2015 to complain about employees using racial slurs.[6] *Id.* at 129–30.

---

[5] In its reply CB&I asserts, for the first time, that this claim is unexhausted because Mason's EEOC documents "[do] not contain any particulars regarding his retaliation claim." Doc. 47, att. 2, p. 8. Even if this issue were properly before the court, the boxes for retaliation are selected in Mason's charge and intake questionnaire. Doc. 1, att. 4; doc. 40, att. 28. He also complained of experiencing harassment prior to his termination, giving rise to an inference that any adverse employment action might be based on his complaints about this harassment. Doc. 40, att. 28, p. 2. Accordingly, the EEOC's investigation could reasonably be expected to encompass the retaliation allegations above.

[6] As CB&I observes, Mason's contemporaneous notes only describe calls made after his termination and he produces no other documentation of the alleged reporting. *See* doc. 40, att. 11. Mason's testimony is sufficient to raise issues of fact as to whether such calls were made.

A plaintiff need not file a formal complaint or EEOC charge to meet the opposition requirement. Instead, he can be the subject of retaliation under Title VII when he informally complains to a supervisor about unlawful discrimination. *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914–15 (5th Cir. 2008). Mason produces evidence that he complained of race-based harassment to supervisors and human resources prior to his termination.[7] Accordingly, he can withstand summary judgment on this element.

As for the causal element, the plaintiff must show that his protected activity was a but-for cause of his termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Temporal proximity, together with other factors, may supply this connection. *United States ex rel. George v. Boston Sci. Corp.*, 864 F.Supp.2d 597, 610 (S.D. Tex. 2012). Additional evidence includes where the employment record does not support the adverse action and when the employer departs from typical policies and procedures in the matter. *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "[A] time lapse of up to four months" between protected activity and adverse employment action is deemed indicative of causation. *Robinson v. Our Lady of the Lake Reg. Med. Ctr., Inc.*, 535 F. App'x 348, 353 (5th Cir. 2013).

As described above, Mason has produced evidence showing that: (1) he was fired within three months of his complaints; (2) another employee was treated considerably less harshly for a similar event; and (3) he was terminated by one of the supervisors to whom he had complained. Coworker Kristi Landon testified that Skains requested that she "[k]eep

---

[7] In his deposition Mason also stated that he was talking to the EEOC in January 2016, before his termination. *See* doc. 51, pp. 283–84. He does not indicate, however, whether CB&I was aware of this activity.

an eye out on Mason" and later asked her whether Mason had done anything suspicious. Doc. 40, att. 16, pp. 22–23. Mason also testified that, though he was receiving good feedback, Miller placed him under a new safety supervisor and subjected him to higher scrutiny. Doc. 51, pp. 86–88. This evidence shows a substantial issue on whether Mason would have been terminated based on Oney's report of the security checkpoint incident, had he not also been complaining of a hostile work environment. Accordingly, summary judgment should likewise be denied for this claim.

### B. *State Law Claim*

Finally, Mason has brought a claim for reprisal under the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967. Such claims are delictual in nature and therefore subject to the one-year prescriptive period set forth in Louisiana Civil Code article 3492. *Williams v. Otis Elevator Co.*, 557 F. App'x 299, 302 (5th Cir. 2014). This period is not suspended during administrative review or investigation. *Id.*; *Langley v. Pinkerton's, Inc.*, 220 F.Supp.2d 575, 581–82 (M.D. La. 2002).

Mason was terminated on February 2, 2016, and filed this action on December 8, 2017, over one year later. As CB&I asserts and Mason does not contest, his whistleblower claim has prescribed. Accordingly, the motion for summary judgment must be granted as to this claim.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment will be granted as to the state law claim and denied as to the Title VII claims.

**THUS DONE** in Chambers on this 25th day of November, 2019.

*[Signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**